UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re: JULIE ZAMORA,                                                No. 22-10260-j7

Debtor.

**MEMORANDUM OPINION**

After Debtor Julie Zamora obtained a chapter 7 discharge and her bankruptcy case was closed, Debtor sold certain real property located at 7405 Blue Avena Ave. SW, Albuquerque, New Mexico (the "Property") against which Del Norte Credit Union ("DNCU") had recorded a Transcript of Judgment. She then reopened her chapter 7 bankruptcy case[1] and filed a Motion to Avoid Judicial Lien Held by Del Norte Credit Union ("Motion to Avoid Lien" – Doc. 22) pursuant to 11 U.S.C. § 522(f),[2] asserting that DNCU's Transcript of Judgment is a judicial lien that impairs her claimed homestead exemption in the Property.

DNCU opposes the Motion to Avoid Lien on two grounds. First, DNCU contends that Debtor lacks Constitutional and statutory standing to seek § 522(f) lien avoidance against property she no longer owns because of her voluntary transfer of her interest in the Property to a buyer. Alternatively, DNCU contests whether Debtor lived in the Property as her primary residence on the date she filed her chapter 7 bankruptcy petition. Debtor argues DNCU waived the right to contest that requirement by failing to object to the homestead exemption.

The Court held a final, evidentiary hearing on the Motion to Avoid Lien on August 20, 2025, and took the matter under advisement. After careful consideration of the evidence, the Court finds that Debtor used the Property as her primary residence as of the petition date. For reasons explained below, the Court concludes that the deemed allowance of Debtor's homestead

---

[1] *See* Order Reopening Case (Doc. 20).
[2] All statutory references are to tile 11 of the United States Code, unless otherwise noted.

exemption does not preclude DNCU from contesting Debtor's claimed homestead exemption in defense of the Motion to Avoid Lien, and that, even though Debtor no longer owned the Property when she filed her Motion to Avoid Lien, she has satisfied both Constitutional and statutory standing requirements to seek lien avoidance under § 522(f). Finally, the Court concludes that Debtor may avoid DNCU's judicial lien recorded against the Property in accordance with § 522(f).

FACTS AND PROCEDURAL HISTORY

The Court FINDS:

The parties do not dispute most of the facts necessary to decide the Motion to Avoid Lien. Debtor acquired the Property by Warranty Deed on June 26, 2020.[3] On March 31, 2022, Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code (the "Petition Date").[4] Debtor scheduled the Property on Schedule A/B with a value of $168,700.00.[5] Debtor claimed a homestead exemption in the Property pursuant to N.M.S.A. 1978, § 42-10-9 (2022), in the amount of $17,198.00.[6] On the petition date, the value of the Property was $168,700.00.[7] Debtor scheduled the following claims secured by liens against the Property: 1) Idaho Housing Agency, in the amount of $146,601.00; and 2) New Mexico Mortgage Finance Authority, in the amount of $4,901.00. Debtor scheduled DNCU as an unsecured creditor on Schedule E/F.[8] DNCU did not

---

[3] *See* Exhibit 1.
[4] *See* Doc. 1. With the parties' consent at the final hearing on the Motion to Avoid Lien, the Court took judicial notice of the docket and documents filed of record in this bankruptcy case.
[5] *Id.*; Exhibit A-1.
[6] *Id.*; Exhibit A-7.
[7] In its Objection to the Motion to Avoid Lien (Doc. 26), DNCU contested the Property's value. However, at the preliminary hearing on the Motion to Avoid Lien, counsel for DNCU, conceded that value is not an issue for purposes of deciding the Motion to Avoid Lien. No evidence of value of the Property, other than Debtor's Schedule A/B, and Debtor's testimony about Schedule A/B was presented at the final hearing on the Motion to Avoid Lien.
[8] *See* Doc. 1; Exhibit A-9 and Exhibit A-10..

object to Debtor's claim of homestead exemption in the Property. Debtor received a discharge in her chapter 7 case on July 11, 2022, and the bankruptcy case was closed on the same date.[9]

Before Debtor filed her bankruptcy case, DNCU filed a First Amended Complaint for Debt and Money Due against Debtor in the First Judicial District Court, County of Santa Fe, State of New Mexico as Case No. D-101-CV-2021-01387 (the "State Court Action").[10] DNCU obtained a Transcript of Judgment in the State Court Action on March 28, 2022, and recorded the Transcript of Judgment in the real property records of both Santa Fe County and Bernalillo County New Mexico on March 30, 2022, one day before Debtor filed her chapter 7 bankruptcy case.[11] In connection with the State Court Action, Debtor used the following address: 924 Lopez Street, Santa Fe, New Mexico 97501 ("Santa Fe Address"). Debtor filed documents in the State Court Action using the Santa Fe Address. For example, Debtor signed the answer filed in the State Court Action reflecting the Santa Fe Address in her signature block.[12] Debtor testified that she received notice of the State Court Action at the Santa Fe Address, but that she did not live there at the time. The Court finds this testimony credible and so finds.

The Santa Fe Address is Debtor's parents' address. Debtor stayed at the Sante Fe Address during the years before she bought the Property. During the period that she lived at the Santa Fe Address, Debtor had an account with DNCU and provided DNCU with the Santa Fe Address as her contact address. In June of 2020, Debtor decided to move to Albuquerque to be closer to her two grandchildren. After Debtor purchased the Property on June 26, 2020,[13] Debtor moved into

---

[9] *See* Doc. 16 (Order of Discharge) and Doc. 17 (Final Decree).
[10] *See* Exhibit 4.
[11] *See* Exhibit B-1.
[12] *See* Exhibit 5.
[13] *See* Exhibit 1.

-3-

the Property and continued to use the Property as her primary residence as of the Petition Date (March 31, 2022).

Debtor used the Santa Fe Address as a mailing address rather than the address of the Property because, in her view, it was a more reliable address to receive mail. On her petition, Debtor listed the Property as the address where she lived and designated the Santa Fe Address as her mailing address.[14] From September of 2024 to February of 2025, in an effort to achieve financial stability while Debtor continued to reside at the Property as her primary residence, she rented the Property via Airbnb from time-to-time as a short-term rental. The longest rental term was for about seven days. When the Property was rented, Debtor would stay with her older son, who lives in Albuquerque. Debtor decided to sell the Property in April of 2025 and canceled the listing for the Property with Airbnb at that time.

On May 28, 2025, Debtor sold the Property.[15] Debtor transferred the Property to the buyer by a Warranty Deed dated May 28, 2025.[16] After the sale of the Property, Debtor moved in with her older son. From the time Debtor acquired the Property in 2020 until the Property was sold in 2025, Debtor intended for the Property to be her primary residence and occupied and used the Property as her primary residence. Debtor did not know about DNCU's Transcript of Judgment recorded against the Property until she sold the Property. Proceeds from the sale of the Property remain in escrow.

Almost two years after Debtor's bankruptcy case was closed on July 11, 2022, Debtor filed the Motion to Reopen Case on June 18, 2025.[17] The Court reopened her bankruptcy case on

---

[14] *See* Doc. 1.
[15] *See* Exhibit 2.
[16] *Id.*
[17] *See* Doc. 19.

June 24, 2025.[18] Debtor filed the Motion to Avoid Lien on June 25, 2025.[19] After the final hearing on the Motion to Avoid Lien, pursuant to an order of the Court, the escrow company handling the closing of the sale of the Property deposited $16,355.20 (the "Funds") into the Court's registry.[20] The Order for Deposit of Sales Proceeds provides that DNCU's lien attaches to the Funds unless and until the lien is avoided by order of the Court, and that the Funds will remain in the Court registry pending further order of the Court[21]

DISCUSSION

Lien avoidance is governed by § 522(f), which provides, in relevant part:

[T]he debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, is such lien is—
    (A) A judicial lien . . . .

§ 522(f)(1).

Lien avoidance under § 522(f) requires Debtor to establish three things: "(1) that the lien is a judicial lien; (2) that the lien is fixed against an interest of the debtor in property; and (3) that the lien impairs an exemption to which the debtor would otherwise be entitled." *McCart v. Jordana (In re Jordana)*, 232 B.R. 469, 473 (10th Cir. BAP 1999) (quoting *Henderson v. Belknap (In re Henderson)*, 18 F.3d 1305, 1308 (5th Cir. 1994)), *aff'd,* 216 F.3d 1087 (10th Cir. 2000).

The first requirement is not contested. DNCU recorded a Transcript of Judgement that created a judicial lien against the Property. A transcript of judgment recorded in the real property records creates a judicial lien subject to avoidance under § 522(f). *In re Hamilton*, 461 B.R. 878,

---

[18] *See* Doc. 20.
[19] *See* Doc. 22.
[20] *See* Order Regarding Deposit of Funds received from Fidelity National Title of New Mexico, Inc. into the Court Registry ("Order for Deposit of Sales Proceeds" – Doc. 40).
[21] *Id.*

892 (Bankr. D. N.M. 2011); *In re Gregory Rockhouse Ranch,* 380 B.R. 258, 262 (Bankr. D.N.M. 2007) ("Transcripts of judgment are the type of judicial lien that is avoidable under 11 U.S.C. § 522(f)." (citation omitted)). DNCU's arguments implicate the remaining two requirements for lien avoidance under § 522(f). DNCU contends that Debtor lacks Constitutional and statutory standing to seek lien avoidance after she voluntarily transferred her interest in the Property. Alternatively, DNCU contests that Debtor lived in the Property as her primary residence when she filed her bankruptcy case. The Court will address DNCU's contentions in reverse order.

*Whether Debtor lived in the Property as her primary residence*

The third lien avoidance requirement is that the that the lien impairs an exemption to which the debtor would otherwise be entitled in the absence of the judicial lien. *See Owen v. Owen*, 500 U.S. 305, 311 (1991) (impairment for lien avoidance purposes is measured against the homestead exemption that the debtor would have been entitled to claim but for the lien at issue). DNCU questions whether Debtor actually lived in the Property as her primary residence when she filed her bankruptcy case, given that she used the Santa Fe Address in litigation with DNCU shortly before the Petition Date. If Debtor did not live in the Property as her primary residence when she filed her bankruptcy case, she would not be entitled to homestead exemption in the Property without regard to DNCU's lien.

Debtor argues that DNCU waived the right to contest her claim of homestead exemption because it did not timely file an objection to Debtor's claimed homestead exemption in the Property, resulting in allowance of the exemption. *See* § 522(l) ("Unless a party in interest objects, the property claimed as exempt on [Schedule C] is exempt."); Fed. R. Bankr. P. 4003(b) ("[A] party in interest may file an objection to a claimed exemption within 30 days after the later

-6-

Case 22-10260-j7    Doc 43    Filed 11/07/25    Entered 11/07/25 10:10:51 Page 6 of 15

of: the conclusion of the § 341 meeting of creditors; the filing of an amendment to the list; or the filing of a supplemental schedule.").

However, the allowance of a homestead exemption because no party in interest timely filed an objection does not preclude a creditor from later contesting the allowed exemption in the context of a request to avoid the creditor's lien §522(f). Bankruptcy Rule 4003(d) provides:

> As an exception to (b), a creditor may object to a request under §522(f) by challenging the validity of the exemption asserted to be impaired by the lien.

Fed. R. Bankr. P. 4003(d).

Under Bankruptcy Rule 4003(d), DNCU may challenge the validity of Debtor homestead exemption as part of its objection to Debtor's request under §522(f) even though it did not timely object to Debtor's homestead exemption under Rule 4003(b).[22]

The New Mexico homestead exemption statute in effect on the Petition Date provided that "[e]ach person shall have exempt a homestead in a dwelling house and land occupied by the person . . . provided that the dwelling is owned, leased or being purchased by the person claiming the exemption." N.M.S.A. 1978, § 42-10-9 (2022). Thus, Debtor was required to occupy the Property in order to claim a homestead exemption in the Property. The homestead exemption amount available under N.M.S.A. 1978, § 42-10-9 (2022) as of the Petition Date was $60,000. *Id.*

Debtor's testimony regarding her use of her parents' address as a mailing address rather than the Property address is credible. Having considered the evidence regarding Debtor's use of the Property on the Petition Date, even though Debtor received mail and used the Santa Fe

---

[22] *See also In re Schmidtke*, 513 B.R. 579, 584 (Bankr. D. Colo. 2014) ("[T]he fact that property has been deemed exempt under § 522(l) is not determinative of the debtor's ability to avoid a lien on that property."); *In re Patterson*, 275 B.R. 578, 584 (Bankr. D. Colo. 2002) (lien creditor may defend a lien avoidance motion by challenging the debtor's right to claim the exemption).

-7-

Address in documents filed in the State Court Action, the Court has found that Debtor intended the Property to be her primary residence and occupied and used the Property as her primary residence for a period of years that included the Petition Date. She satisfied the requirements under N.M.S.A. 1978, § 42-10-9 (2022) for allowance of a homestead exemption in the Property. *Cf. In re Wells*, 132 B.R. 966, 968 (Bankr. D.N.M. 1991) (holding that "'occupied' must not be construed so narrowly as to deprive a debtor of a homestead exemption she would be entitled to but for actual physical occupancy[,]" and concluding "that the debtor never abandoned her homestead and that her intent to occupy the homestead entitles her to claim an exemption."). Debtor's post-petition, post-discharge, efforts to rent the Property as a short-term rental property are not relevant to whether Debtor otherwise was entitled to claim a homestead exemption in the Property on the Petition Date. *See In re Romo*, 668 B.R. 661, 667 (Bankr. D.N.M. 2025) ("[T]he petition date is the operative date for determining a debtor's exemption rights." (citing *In re Lampe*, 278 B.R. 205, 210 (10th Cir. BAP 2002), *aff'd,* 331 F.3d 750 (10th Cir. 2003))).

> *Whether Debtor has standing to seek to avoid a judicial lien in property she no longer owns*

DNCU's primary argument is that Debtor lacks standing to avoid its lien because she had already transferred ownership of the Property before she filed the Motion to Avoid Lien, relying on cases addressing Constitutional and statutory standing. The Court will address both the Debtor's Constitutional and statutory standing to seek to avoid DNCU's lien under § 522(f) as threshold issues before examining whether Debtor has satisfied the requirements of § 522(f) to avoid DNCU's lien.

*Constitutional Standing*

Constitutional standing, also known as Article III standing, limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const., Art. III, § 2.[23] Article III standing requirements apply in bankruptcy court even though the bankruptcy court is not an Article III court.[24] If there is a colorable standing issue, the Court must examine whether the moving party has Constitutional standing to seek the relief requested because Article III standing is a jurisdictional requirement.[25] Article III standing requires that the complaining party "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Petttine*, 655 B.R. at 213 (quoting *Peeples*, 880 F.3d at 1212). A party satisfies Article III standing requirements "so long as the party that is invoking the court's jurisdiction has a concrete stake in the relief it is seeking." *In re AIO US, Inc.*, 672 B.R. 261, 271 (Bankr. D. Del. 2025). "What matters is that the court's resolution of the dispute would provide appropriate relief to a party that is entitled to seek it." *Id.*

DNCU relies on *In re Moody*, No. 19-33968, 2021 WL 4483981 (Bankr. N.D. Ohio Sept. 30, 2021) to attack Debtor's Constitutional standing. *In re Moody* involved a debtor who died after filing a motion to reopen the bankruptcy case to avoid a lien under § 522(f) but before the case was reopened and before the deceased Debtor's counsel filed a motion to avoid judgment lien on the Debtor's behalf. *Moody,* 2021 WL 4483981, at *1. Even though the Debtor had an interest in the real property before the creditor's lien attached, the *Moody* court concluded that, following debtor's death, the debtor lacked Constitutional standing to seek lien avoidance. *Id.* at

---

[23] *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014); *In re Riddle*, 671 B.R. 758, 762 (Bankr. D.N.M. 2025) (citation omitted).
[24] *In re Pettine*, 655 B.R. 196, 209-10 (10th Cir. BAP 2023).
[25] *In re Peeples*, 880 F.3d 1207, 1212 (10th Cir. 2018); *Riddle*, 671 B.R. at 762 (citation omitted).

\* 8. Upon debtor's death, the debtor's interest in the property automatically passed to debtor's heirs by operation of Ohio law. *Id.* Because debtor no longer held any interest in the property at the time of filing of the motion to avoid judicial lien, debtor could not suffer any injury in fact necessary to satisfy Article III Constitutional standing requirements. *Id.* The *Moody* court therefore concluded that the debtor lacked Constitutional standing to avoid the judicial lien because he had not suffered a concrete injury from the lien's continued attachment to the property after his death. *Id.* at \*10.

Here, unlike in *Moody*, Debtor retained a concrete stake in the outcome of the lien avoidance motion even though she no longer had an interest in the Property when she filed the Motion to Avoid Lien because she continued to hold an interest in the sales proceeds, to which DNCU's lien attached. Thus, even though Debtor sold the Property in which she claimed a homestead exemption and did not seek lien avoidance until after the sale, until the proceeds of the sale are fully disbursed, Debtor nevertheless faces an injury in fact if not allowed to claim the homestead exemption and seek to avoid DNCU's judicial lien under § 522(f).[26] The injury in fact is the loss of proceeds representing Debtor's homestead exemption; such injury in fact is fairly traceable to DNCU's judicial lien, which will be paid if she is unable to seek lien avoidance to the extent the lien impairs her homestead exemption; and a favorable decision on the Motion to Avoid Lien will redress Debtor's injury.

---

[26] *See Moody*, 2021 WL 4483981, at \*9 (acknowledging that "[i]f . . . the debtor's exemption and the judicial lien continued in the still-extant proceeds, . . . then debtors would have a redressable injury in fact that afforded them standing to seek relief from the bankruptcy court.").

*Statutory Standing*

The Tenth Circuit, relying on *Lexmark Int'l v. Static Control Components, Inc.*, 572 U.S. 118 (2014), has abandoned use of the nomenclature of "statutory standing" or "zone of interests" to refer to non-Article III limits on the right to assert a claim under a federal statute, explaining:

> Although traditionally viewed as a prudential- or statutory-standing requirement, the zone-of-interests doctrine isn't actually a matter of standing at all; instead, it merely asks whether a particular federal cause of action "encompasses a particular plaintiff's claim." *Lexmark Int'l v. Static Control Components, Inc.*, [572 U.S. 118, 127], 134 S.Ct. 1377, 1387, 188 L.Ed.2d 392 (2014); *see also United States v. Wells*, 873 F.3d 1241, 1261 (10th Cir. 2017) ("[T]he question that courts have misguidedly used the term 'standing' to describe . . . is really whether a particular litigant is a member of a class that Congress has authorized to sue . . . .").

*Peeples*, 880 F.3d at 1213.

Regardless of what this requirement is called, to determine whether Debtor may seek to avoid DNCU's lien, the Court will address whether Debtor is a member of the class that Congress has authorized to seek relief under § 522(f).

DNCU relies on *In re Carilli*, 65 B.R. 280 (Bankr. E.D.N.Y. 1986) to attack Debtor's statutory standing. In *Carilli*, the debtor sought to reopen her chapter 7 bankruptcy case for the purpose of filing a motion to avoid a judicial lien five weeks after she voluntarily sold her residence. *Carilli*, 65 B.R. at 281. The *Carilli* court found that the language in § 522(f) authorizing a debtor to "avoid the fixing of a lien *on an interest of the debtor in property*," § 522(f) (emphasis added), means that "the debtor must have a present cognizable interest in the property for her to have standing to move the court pursuant to section 522(f)." *Carilli*, 65 B.R. at 282 (citing *In re Montemurro*, 66 B.R. 124 (Bankr. E.D.N.Y. 1984)). The *Carilli* court reasoned further that because the purpose of the homestead exemption is to "keep a roof over the heads of the debtor and his family," that purpose is no longer served when the debtor no longer owns or occupies the property. *Carilli*, 65 B.R. at 282. The *Carilli* court thus concluded that

because the reason for the exemption disappeared after the debtor no longer occupied the property as her residence, the debtor lacked standing to seek lien avoidance under § 522(f). *Id.* at 283.

This Court disagrees with *Carilli* that the statutory purpose of § 522 would not be served if a debtor who no longer owns the homestead property is allowed to seek lien avoidance. The purpose of § 522(f) is not limited to keeping a roof over the heads of the debtor and the debtor's family. It more broadly furthers the fresh start policy of the Bankruptcy Code. Granting honest but unfortunate individual debtors a "fresh start" is one of the Bankruptcy Code's most fundamental purposes. *See In re Orr*, 304 B.R. 875, 877 (Bankr. S.D. Ill. 2004) (allowing debtor to avoid a judicial lien that attached to debtor's homestead even though she had since sold the property because lien avoidance "furthers the policy of liberally construing exemption provisions in order to give the debtor a fresh start.")[27] If Debtor is entitled to avoid the DNCU's judicial lien, Debtor may use the proceeds from the sale of the homestead Property to acquire a new homestead property. Or, she may choose to use the sale proceeds in other ways thereby enabling her to make a financial fresh start. Because § 522(f)(1) furthers the fresh start policy of the Bankruptcy Code even when a debtor no longer has an interest in the homestead property at the time the debtor seeks to avoid the lien, the Court concludes that Debtor is a member of a class that Congress has authorized to seek to avoid a lien under § 522(f).

---

[27] *See also Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 715 ("One of the 'main purpose[s]' of the federal bankruptcy system is 'to aid the unfortunate debtor by giving him a fresh start in life, free from debts, except of a certain character.'" (quoting *Stellwagen v. Clum*, 245 U.S. 605, 617 (1918))); *In re Busch*, 369 B.R. 614, 621 (10th Cir. BAP 2007) ("The purpose of bankruptcy is to provide the debtor with a 'fresh start.'").

*Whether § 522(f) requires a debtor to have a present ownership interest in the homestead property when the motion to avoid lien is filed*

A debtor's ownership interest in property for which the debtor is entitled to a homestead exemption in the bankruptcy case at the time the lien avoidance motion is filed is not a mandatory requirement to seek lien avoidance under § 522(f). In *Farrey v. Sanderfoot,* 500 U.S. 291 (1991), the Supreme Court held that "a debtor cannot use § 522(f)(1) to avoid a lien on an interest acquired after the lien attached." *Farrey,* 500 U.S. at 299. The Supreme Court elaborated that "the critical inquiry [is] whether the debtor ever possessed the interest to which the lien fixed, before it fixed." *Id*. In *In re Chiu*, 304 F.3d 905 (9th Cir. 2002), the Ninth Circuit relied on *Farrey* to reason that § 522(f)(1) permits lien avoidance even if the debtor no longer has an interest in the property at the time the debtor seeks to avoid the lien, provided the debtor possessed an interest in the property before the lien fixed. *Chiu*, 304 F.3d at 908-09. Other Courts similarly conclude that a debtor may nevertheless avoid a judicial lien in homestead property pursuant to § 522(f) even if the debtor no longer owns the property when the debtor files the motion to avoid lien.[28]

In sum, it is possible for a debtor to avoid a judicial lien under § 522(f) even if the debtor no longer owns the homestead property when the debtor files a motion to avoid lien. All that is required is that 1) the debtor has Constitutional standing; 2) the debtor is a member of the class that Congress authorized to seek relief under the statute (sometimes known as statutory standing); 3) the debtor held an interest in the homestead property at the time the judicial lien

---

[28] *See, e.g., In re Wilding,* 475 F.3d 428, 432 (1st Cir. 2007) (holding that § 522 permits a debtor to avoid a judicial lien provided the lien existed on the petition date, even though the lien was satisfied after the bankruptcy case was closed and before the debtor filed a motion to avoid the lien); *Orr*, 304 B.R. at 877 (holding that debtor could avoid creditor's judicial lien even though she sold the property before filing the motion to avoid judicial lien because debtor had an interest in the property before the lien attached).

attached, 4) the debtor is entitled to a homestead exemption in the property on the petition date; and 5) the judicial lien impairs the homestead exemption. As discussed above, the Debtor has satisfied the first four requirements. The Court will next address the last requirement.

*Whether DNCU's judicial lien impairs Debtor's exemption*

Section 522 directs the Court to apply the following formula to determine lien avoidance:

> [A] lien shall be considered to impair an exemption to the extent that the sum of—
> (i) the lien;
> (ii) all other liens on the property; and
> (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.

§ 522(f)(2)(A).

The value of the Property, the amount of the DNCU's judicial lien, and the total amount of the other liens against the Property are all fixed as of the Petition Date. *See In re O'Hara*, 835 F. App'x 253, 255 (9th Cir. 2020) ("Under § 522(f)(2)(A), the extent to which a lien impairs an exemption depends on the value of the lien and the debtor's interest in the property on the petition date." (citations omitted)); *In re Martinez*, 469 B.R. 74, 83 (Bankr. D.N.M. 2012); *In re Pacheco,* 342 B.R. 352, 357 (Bankr. D.N.M. 2006). Application of § 522's formula yields the following result: $15,035.85 (DNCU's lien amount)[29] + $151,502.00 (total amount of all other consensual liens on the Property) + $60,000 (the amount of the homestead exemption that Debtor could claim if there were no liens against the Property) = $226,537.85, which exceeds $168,700.00 (the total value of the Property on the Petition Date) by more than the amount of DNCU's judicial lien. DNCU's judicial lien is, therefore, avoidable in its entirety.[30]

---

[29] Exhibit B-1.
[30] A straightforward way to apply the statutory lien avoidance formula is to begin with the fair market value of the property on the petition date, and subtract from that figure the amount of any consensual liens and the amount of the applicable allowed exemption; if the result is zero or less, the judicial lien can be

-14-

*Conclusion*

Based on the foregoing, the Court concludes that Debtor is entitled to avoid DNCU's judicial lien in its entirety pursuant to § 522(f). The Court will enter a separate order consistent with this Memorandum Opinion.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: November 7, 2025

COPY TO:

Michael Edward Lash
Attorney for Debtor
Michael E. Lash, P.C.
3003 Louisiana BL NE
Albuquerque, NM 87110

James A Artley
Attorney for Del Norte Credit Union
PO Box 1307
Albuquerque, NM 87103-1307

---

avoided in its entirety. *See McWilliams v. Redstone Fed. Credit Union (In re McWilliams)*, No. 15-83117-CRJ-7, 2016 WL 4991502, at *1 (Bankr. N.D. Ala. Sept. 16, 2016). Application of § 522's formula yields the following result: $168,700.00 (value of the Property) - $151,502.00 (total consensual liens) - $17,198.00 (amount of Debtor's claimed exemption) = zero.